IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.
05 JUN 23 PM 4: 42
ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

|  |  |  |
|---|---|---|
| MARK CHRISTOPHER OBERT and LESLEY OBERT, | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) ) | Case No. 03-2135 D/V |
| THE PYRAMID, CITY OF MEMPHIS, SHELBY COUNTY GOVERNMENT, PUBLIC BUILDING AUTHORITY OF MEMPHIS AND SHELBY COUNTY, LEISURE MANAGEMENT INTERNATIONAL D/B/A LMI/HHI, LTD., SPECTACOR MANAGEMENT GROUP D/B/A SMG, CAVENDER BOERNE ACQUISITION OF TEXAS, LTD., MEMPHIS POLICE DEPARTMENT, GEORGE STRAIT PRODUCTIONS, INC., and GEORGE STRAIT'S TEXAS CONNECTION, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS SHELBY COUNTY GOVERNMENT AND PUBLIC BUILDING AUTHORITY OF MEMPHIS AND SHELBY COUNTY'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is the motion (dkt. # 126) of Defendants Shelby County Government and Public Building Authority of Memphis ("PBA") (collectively "Defendants") for summary judgment of the complaint filed by Plaintiffs Mark Christopher Obert and Leslie Obert ("Plaintiffs"). In their Second Amended Complaint, Plaintiffs assert that Defendants 1) discriminated against Ms. Obert in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, et seq., 2) were negligent/negligent per se for the injuries sustained by Plaintiffs, 3) engaged in outrageous

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 6-24-05



conduct, and 4) were in civil contempt of court. Plaintiffs sought injunctive and declaratory relief against Defendants for their alleged noncompliance with the Consent Order of Disposition ("Consent Order") entered on August 19, 1991, in Paralyzed Veterans of America Mid South Chapter, et al. v. Hackett, et al., No. 91-2462 (W.D. Tenn. 1991), and for Defendants' alleged violation of the ADA.[1] Plaintiffs further seek damages for Mr. Obert's loss of consortium resulting from Ms. Obert's injuries. Defendants argue that they are entitled to summary judgment as to all claims. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. For the following reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Mark Christopher Obert and Lesley Obert, husband and wife, attended a George Strait concert on March 8, 2002, at the Pyramid Arena ("Pyramid") located in Memphis, Tennessee. Second Am. Compl. ¶ 19. Ms. Obert suffers from spina bifida and has been confined to a wheelchair since birth. Id. at ¶ 20. On the date of the concert, Plaintiffs arrived downtown at least one hour before the beginning of the concert. Id. at ¶ 19. Plaintiffs had attended other functions at the Pyramid and were familiar with the facility's available parking and seating options for handicapped individuals. Id.

In accordance with the ingress and egress lane dedicated to handicap access, Plaintiffs assert that they approached the Pyramid from Riverside Drive in an attempt to park in the handicapped spaces located on the South side of the facility. Id. at ¶ 22. The dedicated handicapped lane allegedly was not being used for handicapped access. Id. Plaintiffs assert that Memphis police

---

[1] All claims based on the consent order were dismissed in the Court's July 16, 2003 Order granting in part and denying in part these Defendants' motion to dismiss ("July 16, 2003 Order").

2

officers told Plaintiffs that the South side of the Pyramid had neither handicapped access nor handicapped parking spaces, despite Plaintiffs' protestations and request for handicapped access and parking. Id. Plaintiffs maintain that Mr. Obert then attempted to leave Ms. Obert on the North side of the Pyramid, however, he was denied access. Id. at ¶ 23. Thereafter, Mr. Obert allegedly sought to leave Ms. Obert at the designated handicap drop-off zone located in front of the Pyramid, but again was denied entry by Memphis police officers who told him that there was no handicapped access available in front of the Pyramid and the area was closed to all except those in limousines and church buses. Id.

After being denied access and parking at the Pyramid, Plaintiffs assert that they obtained parking behind Café Francisco Restaurant, which is located several blocks southwest of the Pyramid. Id. at ¶ 25. After parking, Plaintiffs proceeded toward the Pyramid. Id. at ¶ 26. To reach the Pyramid, Plaintiffs allege that they had to cross North Main Street where it intersected with North Parkway. Id. A trolley track ran through the center of North Main Street. Id. As Ms. Obert crossed the street, the tire of her wheelchair lodged in the trolley tracks, causing her to flip over the front of the wheelchair and land on the street. Id. at ¶ 27. The fall allegedly broke Ms. Obert's leg completely through in two separate places. Id. at ¶ 28. Ms. Obert maintains that she had a long and painful recuperation. Id.

On March 7, 2003, Plaintiffs initiated the instant action against Defendants. On the same day, Plaintiffs filed an action in state court against entities associated with the Memphis Area Transit Authority ("MATA") for the injuries Plaintiffs suffered as a result of Ms. Obert's wheelchair becoming lodged in the trolley tracks. In the July 16, 2003 Order, this Court held that Plaintiffs could not proceed with their claims based on Defendants' alleged noncompliance with the Consent

3

Order. Thus, Plaintiffs' claims for injunctive and declaratory relief and any other claims premised solely on Defendants' alleged noncompliance with the Consent Order were dismissed. Defendants filed a motion for summary judgment on January 25, 2005, as to all remaining claims against them.

## II.  LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927

4

(6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

### III.  ANALYSIS

#### A.  ADA Claim

Plaintiffs contend that Defendants violated Title II of the ADA when Plaintiffs were denied access to the Pyramid handicapped drop-off zone or parking. Section 12132, Title 42 of the United States Code provides: "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

5

entity." 42 U.S.C. § 12132. Thus, in order to establish a violation of Title II of the ADA, a plaintiff must show that 1) she qualifies as a disabled individual; 2) she was excluded from participation in or was denied the benefits of some service, program, or activity by reason of her disability; and 3) the entity providing the service, program, or activity is a public entity. Dillery v. City of Sandusky, 398 F.3d 562, 567 (2005).

Defendants do not dispute that Ms. Obert is disabled pursuant to the ADA. Nor do Defendants contend that they are not public entities as required under the ADA. The dispute concerns whether Defendants denied Ms. Obert the benefit of "some service, program, or activity by reason of her disability." 42 U.S.C. § 12132. First, Defendants assert that Plaintiffs were not denied access to the Pyramid because they utilized the wheelchair ramp, the elevator, and the wheelchair accessible seating area. Plaintiffs argue that although they obtained access to the Pyramid, such access was merely physical and not "meaningful" as required by the ADA, because they were denied access to the designated handicapped parking spaces and were not allowed to enter the required handicapped drop-off zones.

In Chaffin v. Kansas State Fair Bd., 348 F.3d 850 (10th Cir. 2003), the defendant argued that because handicapped plaintiffs had access to the fair and the programs and services at the fair, the plaintiffs could not be deemed to have been "denied the benefits of" the fair under the ADA. Id. at 857. The court did not find this argument persuasive, holding that the mere physical presence of handicapped individuals at the fair was insufficient to avoid ADA liability. Id. The court reasoned that the plaintiffs' inability to use the restroom facilities, view the stage, or utilize the free parking lot was sufficient to establish a denial of the benefits of a public accommodation. Id.

In the instant case, when Plaintiffs were denied access to the handicapped parking and drop-

6

off zone, they were forced to use parking that was not handicap accessible, resulting in severe injury to Ms. Obert. This demonstrates that a genuine issue of material fact exists as to whether Ms. Obert had meaningful access to the Pyramid. Such lack of access is sufficient to establish a denial of benefits, as required under the ADA.

Defendants next argue that Plaintiffs have not established that Defendants intentionally discriminated against Plaintiffs. Defendants assert that Plaintiffs have not proven that they were denied access to the drop-off zone *because* of Ms. Obert's disability. Although courts have held that proof that a defendant intentionally discriminated against the plaintiff must be established to recover damages, see Bartlett v. New York State Bd. of Law Exam'rs, 156 F.3d 321, 331 (2d Cir. 1998); Powers v. MJB Acquisition Corp., 184 F.3d 1147 (10th Cir. 1999); Center v. City of W. Carrollton, 227 F. Supp. 2d 863, 871 (S.D. Ohio 2002), "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." Powers, 184 F.3d at 1153. Consequently, in order for the Plaintiffs to establish that the Defendants violated the ADA, they must show that Defendants used deliberate indifference in denying Plaintiffs access to the Pyramid's handicapped drop-off zone and parking. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)). If the need for an accommodation is obvious or required by statute or regulation, the public entity is on notice that an accommodation is required, thus satisfying the knowledge element of the deliberate indifference test. Id.

Plaintiffs have alleged that Defendants' "failure to provide the Oberts proper access to the

7

Pyramid denied the plaintiffs . . . full and equal enjoyment of a public accommodation in direct violation of the ADA." Pls' Resp. to Def.'s Mot. for Sum. J., p. 8. Plaintiffs contend that Defendants' failure to allow Plaintiffs access to the drop-off zone when they had full knowledge of the requirements of the ADA and the consent order that governed the policies, establishes that Defendants were deliberately indifferent to Plaintiffs' rights.

The ADA provided Defendants with the requisite knowledge for deliberate indifference. Defendants then failed to act upon that knowledge when they failed to ensure Plaintiffs access to the drop-off zone. Defendants argue, however, that by allowing handicapped individuals to enter the full parking lot or the drop-off zone when others are denied access would be affording disabled patrons a greater opportunity than others, which is not required by the ADA. Defendants cite Access Now, Inc. v. South Florida Stadium Corp., 161 F.Supp.2d 1357 (S.D. Fla. 2001) to support their contention. In Access Now, the plaintiff attempted to purchase tickets to a sold-out football game. Id. at 1367. The court held that disabled individuals were not entitled to a greater opportunity to purchase tickets than able-bodied fans. Id. In the instant case, if the parking lots were completely filled, including the handicapped spaces, Defendants would not be required to provide disabled individuals nonexistent spaces, assuming that the number of handicapped parking spaces was adequate to begin with. However, the drop-off zone should never be full, as cars cannot park there. There is no comparable requirement for non-disabled individuals. Thus, even if Defendants could argue that Access Now does not require them to allow Plaintiffs access to the parking lots when all spaces are full, Access Now does not support Defendants' contention that they were not required to allow Plaintiffs access to the drop-off zone.

Defendants assert that they cannot be liable under Title II of the ADA because they have no

8

control or ownership of the streets surrounding the Pyramid. However, their ownership and control over the Pyramid and its policies and procedures for ensuring access, open the Defendants to liability under the ADA. Plaintiffs have alleged that Defendants breached their duties under the ADA by neglecting to properly supervise parking and drop-off zones. Furthermore, Plaintiffs contend that Defendants failed to properly train and monitor those persons delegated with the responsibility of providing disabled parking and drop-off zone availability.

Subsection (a) of § 12182 provides that the ADA's prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the ADA, therefore, hold a landlord liable for noncompliance. Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir. 2000). Thus, Defendants Shelby County and PBA could potentially be liable as the owner/landlord of the Pyramid.

Finally, Defendants argue that the denial of access that precipitated this lawsuit was an isolated incident. Because there are policies and procedures in place to guarantee accessibility, Defendants contend that no injunctive relief is required. The Court finds that there exists a genuine issue of material fact as to Defendants' role in training and monitoring the Memphis police officers concerning the required ingress and egress lanes. The Court also finds that there is a genuine issue of material fact as to whether Plaintiffs' denial of access was an isolated event. Finally, the Court finds that there exists a genuine issue of material fact as to whether the existing consent order is adequate for handicapped parking purposes. The Court determines that these are questions of fact best determined by the jury.

Defendants have failed to demonstrate that Plaintiffs had equal and meaningful access to the

9

handicapped drop-off zone and parking. Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiffs' ADA claim. However, as Defendants note, Plaintiffs may not recover punitive damages against Defendants pursuant to the ADA. Johnson v. City of Saline, 151 F.3d 564, 573 (6th Cir. 1998).

### B.    State Law Claims

Defendants move for summary judgment of all of Plaintiffs' claims, which include Plaintiffs' negligence claim. They further argue that it is undisputed that MATA owns, controls, and maintains the trolley tracks. However, Plaintiffs contend that the question of ownership and control of the trolley tracks is not yet resolved. Thus, a question of material fact remains unanswered and the Court denies Defendants' motion for summary judgment as to Plaintiffs' negligence claim.[2]

Defendants assert that the acts complained of by Plaintiffs do not rise to the stringent requirements of the state law claim of outrageous conduct. To establish a claim for outrageous conduct, a plaintiff must establish that the conduct complained of 1) was intentional or reckless; 2) was so outrageous that it is not tolerated by civilized society; and 3) resulted in serious mental injury. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997) (citations omitted). Liability for mental distress damages "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." Id. (quoting Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (Tenn. 1966)). To determine whether conduct is so intolerable as to be outrageous, Tennessee courts apply the following standard enunciated in the Restatement (Second) of Torts § 46, comment d :

---

[2]Defendants ask the Court to reserve ruling on the negligence claim until the question of ownership has been resolved in the pending state court action. Therefore, denial of summary judgment essentially grants Defendants' motion to reserve judgment on the issue of negligence, as that issue is now reserved for trial.

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

Id. at 623.

Plaintiffs have alleged that Defendants' conduct, including but not limited to its operation of the Pyramid without a parking plan and handicapped access and/or its denial of handicapped access, was intentional and reckless. Defendants assert that they have a contractual arrangement with SMG. Moreover, Defendants contend that they have a parking plan in place which follows both the Consent Order and the guidelines of the Department of Justice. Although a genuine issue of material fact remains as to violations of the ADA by Defendants, the Court finds that Plaintiffs have not met the burden of demonstrating that Defendants' acts or inaction rises to the level of outrageous conduct. In their response to Defendants' motion, Plaintiffs simply argue that discrimination can provide the basis for a claim of outrageous conduct and that outrageous conduct allegations are always questions of fact to be left for the jury. However, discrimination is not always outrageous conduct. See, e.g., Bolander v. BP Oil Co., 128 Fed.Appx. 412, 419 (6th Cir. 2005). In this case, there is no evidence of outrageous conduct on the part of Defendants. Furthermore, there are no questions of fact that must be resolved in order to make a determination concerning Plaintiffs' claim of outrageous conduct. Accordingly, the Court grants Defendants' motion for summary judgment

11

as to Plaintiffs' outrageous conduct claim.

Finally, Defendants assert that Plaintiff Mark Obert's claim of loss of consortium is premised upon the claims of his wife. Defendants argue that because Ms. Obert has no viable cause of action against Defendants, Mr. Obert has no cause of action for loss of consortium. Because the Court finds that Ms. Obert does have a viable cause of action against Defendants for violation of the ADA and for negligence, Defendants' motion for summary judgment as to loss of consortium is denied.

### C. Punitive Damages

Defendants maintain that as a matter of law, punitive damages are not permissible against a governmental entity or its employees. Plaintiffs agree and state that they do not seek punitive damages against these Defendants. Thus, Defendants' motion for summary judgment as to Plaintiffs' claim for punitive damages is granted.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' summary judgment motion as to Plaintiffs' state law claim of outrageous conduct and as to Plaintiffs' claim for punitive damages. The Court **DENIES** Defendants' motion for summary judgment with respect to Plaintiffs' claims of violations of the ADA and Plaintiffs' state law claims of negligence and loss of consortium.

**IT IS SO ORDERED** this _23_ day of June, 2005.

*[signature]*
BERNICE BOUIE DONALD
UNITED STATE DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 152 in case 2:03-CV-02135 was distributed by fax, mail, or direct printing on June 24, 2005 to the parties listed.

---

Laurice E. Smith
LAW OFFICE OF LAURICE E. SMITH
2693 Union Ave.
Ste. 200
Memphis, TN 38112

Eugene J. Podesta
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Michael B. Neal
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

J. Phillip Kerley
BREAKSTONE & ASSOCIATES
200 Jefferson Ave.
Ste. #725
Memphis, TN 38103

Elbert Jefferson
CITY ATTORNEY'S OFFICE
125 N. Main Street
Ste. 314
Memphis, TN 38103

Tim Wade Hellen
FARRIS MATHEWS BRANAN BOBANGO HELLEN & DUNLAP, PLC
One Commerce Square
Ste. 2000
Memphis, TN 38103

Alan Harkavy
HARKAVY SHAINBERG KAPLAN & DUNSTAN, PLC
6060 Poplar Ave.
Ste. 140
Memphis, TN 38119

Sara Margaret Falkinham
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Edward Hugh Burrell
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Leo Maurice Bearman
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT