FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 AUG 17 PM 1: 40

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| MARK CHRISTOPHER OBERT and LESLEY OBERT, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 03-2135-DV |
| THE PYRAMID, CITY OF MEMPHIS, SHELBY COUNTY GOVERNMENT, PUBLIC BUILDING AUTHORITY OF MEMPHIS AND SHELBY COUNTY, MEMPHIS POLICE DEPARTMENT, LEISURE MANAGEMENT INTERNATIONAL d/b/a LMI/HHI, LTD., and SPECTACOR MANAGEMENT GROUP d/b/a SMG, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SMG'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO REQUIRE A MORE DEFINITE STATEMENT

Before the Court is Defendant Spectacor Management Group's ("SMG" or "Defendant") motion to dismiss or, in the alternative, to require a more definite statement (dkt. # 109). Defendant asserts that Plaintiffs have not stated a claim upon which relief can be granted. For the following reasons, the Court grants in part and denies in part Defendant's motion to dismiss or, in the alternative, to require a more definite statement.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Mark Christopher Obert and Lesley Obert, husband and wife, attended a George Strait concert on March 8, 2002, at the Pyramid Arena ("Pyramid") located in Memphis, Tennessee.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _8-18-05_



Third Am. Compl. ¶ 14. Ms. Obert suffers from spina bifida and has been confined to a wheelchair since birth. Id. at ¶ 15. On the date of the concert, Plaintiffs arrived downtown at least one hour before the beginning of the concert. Id. at ¶ 14. Plaintiffs had attended other functions at the Pyramid and were familiar with the facility's available parking and seating options for handicapped individuals. Id.

In accordance with the ingress and egress lane dedicated to handicap access, Plaintiffs assert that they approached the Pyramid from Riverside Drive in an attempt to park in the handicap spaces located on the South side of the facility. Id. at ¶ 17. The dedicated handicap lane allegedly was not being used for handicap access. Id. Plaintiffs assert that Memphis police officers, told Plaintiffs that the South side of the Pyramid had neither handicap access nor handicap parking spaces, despite Plaintiffs' protestations and request for handicap access and parking. Id. Plaintiffs maintain that Mr. Obert then attempted to leave Ms. Obert on the North side of the Pyramid; however, he was denied access. Id. at ¶ 18. Thereafter, Mr. Obert allegedly sought to leave Ms. Obert at the designated handicap drop-off zone located in front of the Pyramid, but again was denied entry by Memphis police officers, who told him that there was no handicap access available in front of the Pyramid and the area was closed to all except those in limousines and church buses. Id.

After being denied access and parking at the Pyramid, Plaintiffs assert that they obtained parking behind Café Francisco Restaurant, which is located several blocks southwest of the Pyramid. Id. at ¶ 20. After parking, Plaintiffs proceeded toward the Pyramid. Id. at ¶ 21. To reach the Pyramid, Plaintiffs allege that they had to cross North Main Street where it intersected with North Parkway. Id. A trolley track ran through the center of North Main Street. Id. As Ms. Obert crossed the street, the tire of her wheelchair lodged in the trolley tracks, causing her to flip over the front of

2

the wheelchair and land on the street. Id. at ¶ 22. The fall allegedly broke Ms. Obert's leg completely through in two separate places. Id. at ¶ 23. Ms. Obert maintains that she had a long and painful recuperation. Id. at 25.

On March 7, 2003, Plaintiffs initiated the instant action. On the same day, Plaintiffs filed an action in state court against entities associated with the Memphis Area Transit Authority ("MATA") for the injuries Plaintiffs suffered as a result of Ms. Obert's wheelchair becoming lodged in the trolley tracks. Defendant moves the Court to grant summary judgment as to Plaintiffs third amended complaint with respect to this Defendant.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to file a motion to dismiss for a plaintiff's failure to state a claim upon which relief can be granted. Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are designed to test "whether a cognizable claim has been pleaded in the complaint." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when no set of facts exists which would entitle the plaintiff to recover. Hammond v. Baldwin, 866 F.2d 172, 175 (6th Cir. 1989). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. See, e.g., Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

In reviewing a defendant's Rule 12(b)(6) motion to dismiss, a district court should construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. Meador v. Cabinet for Human Res., 902 F.2d 474, 475 (6th Cir. 1990), cert. denied, 498 U.S. 867

3

(1990). If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991).

A district court may not grant a defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss based on its disbelief of the plaintiff's factual allegations. In Re Sofamor Danek Group, Inc., 123 F.3d 394 (6th Cir. 1997), cert. denied, Murphy v. Sofamor Danek Group, Inc., 523 U.S. 1106 (1998). It is not the court's function to weigh evidence or evaluate the credibility of witnesses. Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). A court will not consider any disputed questions of fact at this stage. Barnes v. Winchell, 105 F.3d 1111, 1114 (6th Cir. 1997). Rather, the court should accept all well-pleaded facts as true and not consider matters outside the pleadings. Hammond, 866 F.2d at 175. "In securities fraud cases, however, courts may consider the full text of SEC filings, prospectuses, and analysts' reports not attached to a plaintiff's complaint if they are integral to statements within the complaint." In re Firstenergy Corp. Sec. Litig., 316 F. Supp.2d 581, 591 (N.D. Ohio 2004) (citation omitted). Courts may also take judicial notice of public records and documents. Id. (citations omitted). The United States Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Nietzke, 490 U.S. at 326-27; Lewis, 135 F.3d at 405 (6th Cir. 1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

4

To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

### III. ANALYSIS

#### A. ADA Claim

Defendant contends that Plaintiffs have not stated a claim for violation of Title II of the ADA. In order to establish a violation of Title II, a plaintiff must show that 1) she qualifies as a disabled individual; 2) she was excluded from participation in or was denied the benefits of some service, program, or activity by reason of her disability; and, 3) the entity providing the service, program, or activity is a public entity. Dillery v. City of Sandusky, 398 F.3d 562, 567 (2005).

Defendant argues that it is not a public entity within the meaning of 42 U.S.C. § 12132, and, therefore, Plaintiffs' Title II claim must be dismissed. A defendant may only be held liable under Title II of the ADA if it is a public entity, not if the defendant merely leases or operates a public accommodation. 42 U.S.C. § 12132. However, under Title III, organizations leasing or operating a public accommodation may be liable for noncompliance with the ADA. 42 U.S.C. § 12182. Title III provides as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182.

When an entity appears to have both public and private features, the court should examine the relationship between the entity and the governmental unit to determine if the entity is in fact public or private. Title II Technical Assistance Manual, § 1.2000 (1993). The relevant factors in this determination include whether: 1) the entity is operated with public funds; 2) the entity's employees are considered government employees; 3) the entity receives significant assistance from

5

the government by provision of the property or equipment; and, 4) the entity is governed by an independent board elected by members of a private organization or a board elected by the voters or appointed by elected officials. Id. Thus, the Court must determine whether or not SMG operates with public funds, maintains government employees, receives significant government assistance, and is governed by a board elected by the voters or appointed by elected officials. SMG receives compensation from the government for its management services of the Pyramid, and the government supplies Memphis police officers for events to aid in parking direction. SMG's employees, however, are not considered government employees and SMG is not governed by a board elected by the voters or appointed by elected officials. Thus, the Court finds that SMG is not a public entity for purposes of Plaintiffs' Title II claim under the ADA.[1] Therefore, the Court grants Defendant's motion for summary judgment as to Plaintiffs' Title II claim against SMG and denies Defendant's motion to dismiss Plaintiffs' Title III claim.

**B.   Injunctive Relief**

Defendant asserts that Plaintiffs' allegations in count II of the complaint are vague and ambiguous and require a more definite statement. Without a more definite statement, Defendant contends that Plaintiffs' request for injunctive relief should be dismissed.

In count II, Plaintiffs allege that they are entitled to an injunction because Defendant violated the ADA when it denied them access to the Pyramid's handicap parking and drop-off zones. Plaintiffs contend that Defendant's failure to allow access has created immediate, irreparable harm to the Oberts and others similarly situated, thus warranting injunctive relief.

Section 12132, Title 42 of the United States Code provides: "Subject to the provisions of this title, no qualified individual with a disability shall,by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,

---

[1] The Court further notes that Title III of the ADA applies to "public accommodations and services operated by private entities." 42 U.S.C. § 12181. A "private entity" as "any entity other than a public entity." Id.

6

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A plaintiff aggrieved by a violation of the ADA or the Rehabilitation Act may seek Title VI remedies. Bartlett v. New York State Bd. of Law Exam'rs, 156 F.3d 321, 331 (2d Cir. 1998); see 29 U.S.C. § 794a(a)(2); see also 42 U.S.C. § 12133 (ADA looks to remedies provided under the Rehabilitation Act). Courts have held that proof that the defendant intentionally discriminated against the plaintiff must be established to recover damages under § 504 of the Rehabilitation Act. See Bartlett, 156 F.3d 321 (2d Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999); Powers v. MJB Acquisition Corp., 184 F.3d 1147 (10th Cir. 1999); Center v. City of W. Carrollton, 227 F. Supp. 2d 863, 871 (S.D. Ohio 2002). "[I]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." Powers, 184 F.3d at 1153. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001) (citing City of Canton v. Harris, 489 U.S. 378, 389, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1988)). If the need for an accommodation is obvious or required by statute or regulation, the public entity is on notice that an accommodation is required, thus satisfying the knowledge element of the deliberate indifference test. Id.

Subsection (a) of § 12182 provides that the ADA's prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the ADA, therefore, hold SMG liable if it is noncompliant. Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir. 2000). Thus, Plaintiff has alleged sufficient facts to state a claim for violations of the ADA. That is an adequate basis for a request for injunctive relief. See e.g., Gonzales v. National Bd. of Medical Examiners, 225 F.3d 620, 625 (2000) ("The ADA includes injunctive relief as an appropriate remedy in disability discrimination.") Accordingly, Defendant's motion to dismiss Plaintiffs' request for injunctive relief is denied.

### C. Negligence Per Se

As the Court discussed in the May 22, 2003 Order Granting In Part And Denying In Part

7

Defendant City Of Memphis' Motion To Dismiss, "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975). A person who is not a party to the consent decree has standing only to challenge the constitutionality of the consent decree itself as it is applied to her. Vogel v. City of Cincinnati, 959 F.2d 594, 599 (6th Cir. 1992). Thus, although the terms of the Consent Order were intended to benefit individuals, like Ms. Obert, who require handicap access and accommodations, Plaintiffs may not proceed with claims based on the terms of the Consent Order unless they challenge the constitutionality of the terms of the Consent Order itself. Plaintiffs do not challenge the constitutionality of the terms of the Consent Order, but instead seek merely to enforce those terms.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' claim of negligence per se.

### D. Loss of Consortium

Defendant asserts that Plaintiff Mark Obert's claim of loss of consortium is premised upon the claims of his wife. Defendant argues that because Ms. Obert has no viable cause of action against Defendant, Mr. Obert has no cause of action for loss of consortium.

Tennessee Code Annotated § 25-1-106 provides for a right of recovery for the loss of consortium of a person whose spouse is injured. Courts have defined consortium as "the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection, and aid of the other in every conjugal relation." Jackson v. Miller, 776 S.W.2d 115, 116-17 (Tenn.Ct.App.1989) (quoting Manning v. Altec, Inc., 488 F.2d 127, 132 (6th Cir.1973)). Plaintiffs allege that Mr. Obert lost the consortium of his wife for many months following the incident at the Pyramid, including both tangible and intangible services.

Loss of consortium is a derivative claim, established by the claims of others. See id. at 117; Swafford v. City of Chattanooga, 743 S.W.2d 174, 178 (Tenn. App. 1987) ("[A] husband's or wife's derivative claim for loss of consortium will always be 'derivative' in the sense that the

8

injuries to his or her spouse are an element [of the claim] and must be proved . . . ."). Because the Court finds that Ms. Obert does have a viable cause of action against Defendant pursuant to the ADA, Defendant's motion to dismiss Plaintiffs' loss of consortium claim is denied.

### E.     Outrageous Conduct

Defendants assert that the acts complained of by Plaintiffs do not rise to the stringent requirements of the state law claim of outrageous conduct. To establish a claim for outrageous conduct, a plaintiff must establish that the conduct complained of 1) was intentional or reckless; 2) was so outrageous that it is not tolerated by civilized society; and 3) resulted in serious mental injury. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997) (citations omitted). Liability for mental distress damages "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." Id. (quoting Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (Tenn. 1966)). To determine whether conduct is so intolerable as to be outrageous, Tennessee courts apply the following standard enunciated in the Restatement (Second) of Torts § 46, comment d :

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

Id. at 623.

Plaintiffs have alleged that Defendants' conduct, including but not limited to its operation of the Pyramid without a parking plan and handicapped access and/or its denial of handicapped access, was intentional and reckless. Although a genuine issue of material fact remains as to violations of the ADA by Defendant, the Court finds that Plaintiffs have not met the burden of demonstrating that Defendant's acts or inaction rise to the level of outrageous conduct. In their

9

response to Defendant's motion, Plaintiffs argue that Defendant's deliberate indifference to safety and discrimination by denying Plaintiffs access to parking and the drop-off zone provide the basis for a claim of outrageous conduct. However, discrimination is not always outrageous conduct. See, e.g., Bolander v. BP Oil Co., 128 Fed.Appx. 412, 419 (6th Cir. 2005). In this case, there is no evidence of outrageous conduct on the part of Defendant. Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' outrageous conduct claim.

### F. Negligence

Defendant maintains that this Court is not the proper venue for Plaintiffs' negligence claim because Plaintiffs have alleged a similar claim in the pending state court action. However, in the state court claim, Plaintiffs did not allege a "failure to train, supervise, implement and communicate . . . the handicapped parking and accessibility requirements. . . ." Third Am. Compl. ¶ 60. Thus, the claims are not identical.

Plaintiffs correctly note that a federal court can exercise pendent jurisdiction over state law claims when there is a federal claim which is sufficient to confer subject matter jurisdiction on the federal court, "and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). The state and federal claims must "derive from a common nucleus of operative fact." Id.

In the instant case, the requirements for exercising pendent jurisdiction are met. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' negligence claim.

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant's motion to dismiss with respect to Plaintiffs' Title II claim under the ADA and Plaintiffs' claims of negligence per se and outrageous conduct. The Court **DENIES** Defendant's motion to dismiss Plaintiffs' Title III claim under the ADA, Plaintiffs' claims of loss of consortium and negligence, as well as Plaintiffs' request for injunctive relief. Furthermore, Defendant's motion to require a more definite statement is **DENIED**.

IT IS SO ORDERED this 17th day of August, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

11

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 166 in case 2:03-CV-02135 was distributed by fax, mail, or direct printing on August 18, 2005 to the parties listed.

---

Leo Maurice Bearman
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Sara Margaret Falkinham
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Tim Wade Hellen
FARRIS MATHEWS BRANAN BOBANGO HELLEN & DUNLAP, PLC
One Commerce Square
Ste. 2000
Memphis, TN 38103

Michael B. Neal
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Laurice E. Smith
LAW OFFICE OF LAURICE E. SMITH
2693 Union Ave.
Ste. 200
Memphis, TN 38112

Elbert Jefferson
CITY ATTORNEY'S OFFICE
125 N. Main Street
Ste. 314
Memphis, TN 38103

J. Phillip Kerley
BREAKSTONE & ASSOCIATES
200 Jefferson Ave.
Ste. #725
Memphis, TN 38103

Eugene J. Podesta
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Alan Harkavy
HARKAVY SHAINBERG KAPLAN & DUNSTAN, PLC
6060 Poplar Ave.
Ste. 140
Memphis, TN 38119

Edward Hugh Burrell
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Honorable Bernice Donald
US DISTRICT COURT